successor of the Berdell bondholders, but it is eminently proper that the corporation which, having the legal right to redeem, has paid the first mortgage, should have the possession of the property as against persons who have not yet substantiated either legal or equitable title. It is important that it can hardly be contended that serious injury will result to the claimants by reason of the possession of the New York & New England Company, which proposes to complete the western end of the road. If this is done, the value of the franchise and of the property will be enhanced.

Let there be a decree in general accordance with the prayer of the cross bill, but with a proviso that nothing in said decree shall affect or impair the right, title or claim of any person or corporation who claim to be stockholders of the Hartford, Providence & Fishkill Railroad Company. The terms and details of the decree will be settled upon hearing.

---

## Case No. 1,004.

### BARNARD v. HERBERT.

[The case cited under this title in Maynadier v. Duff, Case No. 9,349, is the same as Bernard v. Herbert, Case No. 1,347.]

---

BARNARD, (KELLOGG v.) See Case No. 7,661.

---

## Case No. 1,005.

### BARNARD et al. v. MORTON.

[1 Curt. 404.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1853.

CUSTOMS DUTIES—DUTIABLE VALUE—ACT OF 1842—SALT IN SACKS.

1. The sixteenth section of the tariff act of August 30, 1842, (5 Stat. 563,) is not repealed by the tariff act of July 30, 1846, (9 Stat. 42,) and still prescribes the rule for ascertaining the dutiable value of merchandise, procured by purchase, on which an ad valorem duty is imposed.

[Followed in Kriesler v. Morton, Case No. 7,933. Distinguished in Forman v. Peaslee, Case No. 4,941.]

2. The expense of sacks, in which salt is packed for importation from Liverpool, is embraced under the words "all costs" in that section, and is to be added to the market value, to ascertain the dutiable value.

[Cited in Saxonville Mills v. Russell, Case No. 12,413.]

[See U. S. v. Clement, Case No. 14,815.]

At law. This was an action for money had and received [brought] by [George M. Barnard and others, composing the firm of] Barnard, Adams & Co., against Marcus Morton, late collector of the customs for the port of Boston, to recover a sum of money alleged

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

to have been illegally exacted as duties. After introducing witnesses, the substance of whose testimony appears in the opinion of the court, the parties agreed, that, upon this evidence, and the law applicable thereto, the court should direct a verdict. [Verdict directed for defendant.]

Choate & Bell, for plaintiffs.
Hallett, Dist. Atty., for defendant.

CURTIS, Circuit Justice. On the third day of February, 1849, Messrs. Barnard, Adams & Co. entered, at the custom-house in Boston, 2670 sacks of salt, imported from Liverpool. The invoices specified, first, the cost of the salt; second, the number and cost of the sacks in which the salt was imported; third, the charges, consisting of river freight, dock and town dues, mats, cartage of sacks, and filling; and fourth, the commissions. The collector assessed the ad valorem duty of twenty per centum on the footing of the invoice. The plaintiffs protested against so much of the duty as was thus imposed on the cost of the sacks, and, having paid it, this action is brought to recover it back.

The plaintiffs have called witnesses, skilled in the trade, who have testified, that long before the tariff law of 1846, invoices of salt were accustomed to be made as these are made; that the cost of the sacks in which the salt is exported, had not usually or ever been included among the "charges." One witness, who had been extensively engaged in the trade for ten years, and had resided in Liverpool one half that time, testified, that the salt exported from Liverpool is chiefly made in the county of Cheshire; that the manufacturers have agents at Liverpool, who sell it, deliverable either at the works, or at the port of Liverpool. It is sold in bulk, by the ton, and the purchaser directs it to be packed in bleached or half-bleached sacks, the former for fine salt, the latter for coarse. Except some fine salt, known as "factory-filled salt," it comes down the Mersey in bulk, and is filled on board, or alongside the vessel in which it is exported, at the expense of the purchaser. The seller procures the bags for the purchaser, and makes a separate charge to him of their cost; and the invoices make the bags a distinct item. The charges in the invoices are the expenses incident to getting the article on shipboard. The seller of the salt procures the sacks, puts the salt in them, and charges the salt and the sacks to the purchaser; this is the cost of the salt; then the charges are added. The whole constitutes the cost of the cargo. The other witnesses, called on both sides, confirm this statement, so far as their knowledge extends; and they add nothing to it, except the fact that salt in bulk, and bag-salt, is each a distinct and well-known article of commerce in the United States.

Upon these facts, the question is, whether